IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

INGRID ROSE,

                          Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.

No. 3:12-cv-01931-HZ

OPINION & ORDER

Merrill Schneider
SCHNEIDER KERR LAW OFFICES
PO Box 14490
Portland, OR 97293

       Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

Jeffrey R. McClain
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue, Suite 2900 M/S 221A

1 - OPINION & ORDER

Seattle, WA 98104

Attorneys for Defendant

HERNANDEZ, District Judge:

Ingrid Theresa Rose brings this action pursuant to the Social Security Act (the "Act"), 42

U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social

Security (the "Commissioner"). The Commissioner found Plaintiff not disabled and denied her

application for disability insurance benefits ("DIB") and Supplemental Security Income benefits

("SSIB") under Titles II and XVI of the Act, respectively. For the reasons set forth below, the

Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

On February 23, 2009, Plaintiff applied for DIB and SSIB alleging disability beginning

on May 1, 2004. Tr. 20. Plaintiff's claims were denied on May 21, 2009, and upon

reconsideration on October 2, 2009. Id. A hearing was held on February 17, 2011, before

Administrative Law Judge Eleanor Laws (the "ALJ"). Tr. 20, 26. On March 14, 2011, the ALJ

found Plaintiff not disabled. Tr. 26. On September 23, 2010, Plaintiff requested a review of the

ALJ's decision. Tr. 8. On September 10, 2012, the Appeals Council issued an order denying

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

Id. This appeal followed.

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence in the record.

Therefore, the evidence will not be repeated except as necessary to explain my decision.

/ / /

/ / /

2 - OPINION & ORDER

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

At Step One, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At Step Two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At Step Three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At Step Four, the Commissioner determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

At Step Five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2004. Tr. at 22, Finding 2. At Step Two, the ALJ found Plaintiff had the "following severe impairments: hypertension, mild coronary disease, diabetes mellitus, mild hip bursitis, leg, back and arm pain, and moderate snoring." Tr. 22, Finding 3. At Step Three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23, Finding 4. At Step Four, the ALJ found Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling." Tr. 23, Finding 5. The ALJ also found Plaintiff was not disabled because she was "capable of performing past relevant work as a campaign clerk." Tr. 26, Finding 6.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion,

must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986).

"Where the evidence as a whole can support either a grant or a denial, [a court] may not

substitute [its] judgment for the ALJ's."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir.

2007) (citation omitted).

      The initial burden of proof rests upon the claimant to establish disability.  Howard, 782

F.2d at 1486.  To meet this burden, the claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than 12 months.

. . ."  42 U.S.C. § 423(d)(1)(A).

**DISCUSSION**

      Plaintiff asserts that the ALJ erred in the following ways: (1) the ALJ improperly found

that she was not credible; and (2) the ALJ erred at Step Two when concluding that her gout was

not a severe impairment.

**I. Plaintiff's Credibility**

      The Ninth Circuit has developed a two-step process for evaluating the credibility of a

claimant's testimony regarding the severity of symptoms.  See Vasquez v. Astrue, 572 F.3d 586,

591 (9th Cir. 2009).  "First, the ALJ must determine whether the claimant has presented

objective medical evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged."  Id.  (citation omitted).  When doing so, the

claimant need not "show that her impairment could reasonably be expected to cause the severity

of the symptom she has alleged; she need only show that it could reasonably have caused some

degree of the symptom."  Id.  (citation and internal quotation marks omitted).  "If the claimant

meets the first test and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection."   Id.

"To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . : (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."   Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).   The ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ."   Id.

Plaintiff asserts the ALJ erred when finding that she failed to comply with her medical treatment.   Plaintiff contends that the ALJ failed to determine that her medical treatment was "clearly expected to restore capacity to engage in any [substantial gainful activity]" as required under Social Security Ruling ("SSR") 82-59.   See SSR 82-59, 1982 WL 31384, at *1.   Plaintiff also contends that the ALJ erred because Plaintiff testified she could not afford to pay "her prescription bill."   Tr. 51.   In her reply, Plaintiff asserts the ALJ also failed to develop the record as to why Plaintiff did not follow her prescribed treatment.   Contrary to Plaintiff's assertions, the ALJ gave specific, clear, and convincing reasons supporting her adverse credibility determination.

/ / /

/ / /

6 - OPINION & ORDER

### A. Noncompliance

The ALJ reasoned that despite Plaintiff's allegations of disabling pain and symptoms, Plaintiff only "underwent physical therapy until February 2005," and was "released to regular work" in 2005. Tr. 25 (citations omitted). The record confirms the ALJ's findings, showing that on February 22, 2005, one of Plaintiff's treating physicians, Laura K. Bitts, M.D., documented that Plaintiff had been "released from occupational therapy" and that Plaintiff's pain had "gradually improved over the last 10 months." Tr. 738. Bitts also assessed Plaintiff as "medically stationary" and "released [Plaintiff] to regular work . . . ." Tr. 738.

The ALJ also concluded that Plaintiff's "allegations that she [was] unable to walk at times [was] not supported by the treatment record or her daily activities" and that "[d]espite her symptoms[,] she [was] able to work part-time" by "assisting disabled clients," and babysitting in 2008. Tr. 25. The ALJ determined that Plaintiff's ability to work was "inconsistent with her allegations that she [was] unable to walk at times and that she relie[d] on her daughter for all household chores." Tr. 25. The record supports the ALJ's findings, showing that at the February 17, 2011, hearing, Plaintiff testified she worked fulltime in 2009 "caring for a neighbor's kid" and was working part-time, four hours a day, caring for mentally disabled people. Tr. 49-50, 52. Plaintiff testified that caring for mentally disabled people included making sure they "ha[d] their meds", "cook[ing] for them", "mak[ing their] dinner", and "mop[ping] the kitchen." Tr. 51-53.

The ALJ further determined that Plaintiff's credibility was "undermined by her noncompliance with medications for high blood pressure". Tr. 25. The ALJ specifically stated that Plaintiff "forgot to take her blood pressure medications the morning of her stress test" in June 2004, stopped "taking her medications for a month" in July 2010 despite having "severe hypertension", stopped "taking her medications in October 2010", and admitted "she was taking

her medications only intermittently" in December 2010.  Id.  The record supports the ALJ's

findings, showing that on October 26, 2010, James Skavaril, M.D., Plaintiff's treating internal

medicine doctor, noted Plaintiff was not compliant with her treatment and that he was "worried

about [Plaintiff's] compliance issues."  Tr. 523.  Skavaril's October 26, 2010, medical notes also

state that Plaintiff had "stopped taking her antihypertensives[,] . . .Benicar and clonidine[,]" and

had not followed through with the "obstructive sleep apnea test" he had ordered for her.  Id.

Additionally, Skavaril noted that Plaintiff had been "reluctant to follow up on [his] bias to have

[a lesion at the base of her tongue] reevaluated", had "discontinued her [A]llopurinol"[1], and had

"never filled" her cholesterol prescription.  Id.  Skavaril's October 26, 2010, medical notes also

state that although Plaintiff had "called for refill of her blood pressure medication nearly a month

ago[,]" she had not yet picked it up.  Id.  Similarly, Skavaril's December 16, 2010, medical notes

state that despite being "high risk for sleep apnea" and despite the fact that he had contacted

Plaintiff "twice to schedule a sleep study[,]" she had not scheduled one.  Tr. 521.  Skavaril

expressly documented that he was "a bit disappointed that [Plaintiff] was taking this long for her

to get her sleep study scheduled".  Tr. 522.  Skavaril also documented that it was "[d]ifficult to

control [Plaintiff's] hypertension" because it was "probably related to multiple issues[,]"

including [Plaintiff's] noncompliance with medications[,]" and stated that Plaintiff had "missed

her last appointment", "did not schedule her sleep study", and had "forgot[ten] to take her

medications" that day.  Id.

        The ALJ properly considered Plaintiff's failure to comply with recommended treatment

when discrediting her statements.  See Smolen, 80 F.3d at 1284 ("unexplained or inadequately

explained failure to seek treatment or to follow a prescribed course of treatment" supports a

negative credibility finding); see also SSR 96-7p, 1996 WL 374186, at *7 (an individual's

---

[1] Plaintiff asserts Allopurinol was prescribed for her gout.  Defendant does not argue otherwise.

8 - OPINION & ORDER

statements "may be less credible if . . . the medical reports or records show that [she] is not following the treatment as prescribed and there are no good reasons for this failure").  Although Plaintiff testified on February 17, 2011, that she could not afford to pay "her prescription bill", such statement alone does not render the ALJ's decision erroneous.  Plaintiff cites to no other evidence in the record, including any medical notes in the record, showing that the reason she repeatedly failed to follow her prescribed treatment was that she could not afford to do so.

In short, the ALJ articulated specific, clear, and convincing reasons supported by substantial evidence in the record when finding Plaintiff's reports of disabling pain and symptoms not credible.

**B. SSR 82-59**

Plaintiff argues that the ALJ erred when finding Plaintiff's statements not credible because the ALJ did not follow SSR 82-59.  I disagree.

SSR 82-59 "provides that an ALJ may deny benefits to a claimant who has a disability if the claimant unjustifiably fails to follow prescribed treatment that is clearly expected to restore capacity to engage in any [substantial gainful activity]." Molina v. Astrue, 674 F.3d 1104, 1114 n.6 (9th Cir. 2012) (citing SSR 82-59).  This rule, however, is not applicable where the ALJ determines that the claimant is "not disabled" and where the claimant's "failure to seek treatment . . . was merely a factor in the ALJ's credibility determination." Id.; see also Walton v. Colvin, No. 3:11-cv-01384-AC, 2013 WL 2659658, at *10 (D. Or. 2013) (SSR 82-59 "is applicable only if a claimant is already receiving benefits or would be eligible for benefits").

Here, Plaintiff fails to establish that she is already receiving benefits or is eligible for benefits.  In addition, even if SSR 82-59 did apply, Plaintiff does not establish that "free community resources [were] unavailable", that "[a]ll possible resources (e.g., clinics, charitable

and public assistance agencies, etc.)" were "explored", or that "[c]ontacts with such resources

and the claimant's financial circumstances [were] . . . documented" as required under SSR 82-59.

See SSR 82-59, 1982 WL 31384, at *4.

### C. Failure to Develop the Record

With respect to Plaintiff's argument that the ALJ did not fully develop the record, this

argument is unavailing because it was raised for the first time in Plaintiff's reply.  It is therefore

deemed to be waived.  See Detrich v. Ryan, No. 08-99001, 2013 WL 4712729, at *28 n.6 (9th

Cir. 2013) ("issues raised for the first time in a reply brief are . . . waived") (citation omitted).

Even if I were to consider Plaintiff's argument, however, I would still conclude that the ALJ did

not err in this instance.  "An ALJ's duty to develop the record further is triggered only when

there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of

the evidence."  E.g., Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation

omitted).  Plaintiff's brief statement at the February 17, 2011, hearing that she was unable to pay

"her prescription bill" does not make the evidence in the record ambiguous or inadequate–

especially where Skavaril's medical notes repeatedly documented that Plaintiff did not comply

with her prescribed treatments and where Plaintiff points to no other evidence in the record

showing that she could not pay for her prescribed treatments.

In sum, the ALJ provided specific, clear, and convincing reasons supported by substantial

evidence in the record when finding Plaintiff not credible.  As such, the ALJ's adverse credibility

finding must be sustained.

## II. Step Two

Plaintiff asserts the ALJ erred at Step Two when concluding that her gout was not severe.

Plaintiff contends the ALJ should have found her gout severe because the ALJ improperly found

that there was no evidence of gout since her alleged onset date and the ALJ failed to resolve the ambiguity arising out of the conflict between Sonya Abbassian, M.D.'s conclusion that Plaintiff had gout and Skavaril's conclusion that Plaintiff no longer had gout.  A careful review of the record shows that the ALJ did not commit reversible error.

Step Two is a "de minimus screening device to dispose of groundless claims."  Smolen, 80 F.3d at 1290 (citation omitted).  A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b).  Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  Id.  "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. . . . [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working."  SSR 85-28, 1985 WL 56856, at *2 (internal quotation marks omitted).

### A. Evidence of Gout

Here, the ALJ found that Plaintiff's gout was not a severe impairment, stating that although Plaintiff "has a history of gout[,] . . . there [was] no evidence of gout since her alleged onset date and she is not on medication."  Tr. 23.  Plaintiff asserts that the ALJ erred because contrary to the ALJ's finding, there is evidence of gout since her alleged onset date.

The ALJ's conclusion that there was no evidence of gout since Plaintiff's alleged May 1, 2004, onset date was erroneous. Abbassian's May 2009 medical notes state, among other things, "Gout – severe". Tr. 959. Bradley Evans, M.D.'s November 2009 medical notes list "[A]llopurinol" as one of Plaintiff's current medications. Tr. 513. In addition, Skavaril's April 2010 medical notes state that Plaintiff is "being treated for gout" and assess Plaintiff with, among other things, gout. Tr. 531. The ALJ's finding that the record was absent any evidence showing Plaintiff had gout after her alleged onset date is not supported by substantial evidence.

The ALJ's conclusion that Plaintiff's gout was not severe because Plaintiff was no longer taking gout medication, however, is supported by substantial evidence. Skavaril's latest medical records show that in October 2010, Plaintiff had "discontinued her [A]llopurinol". Tr. 524. In addition, Skavaril's October 2010 medical notes show that Skavaril did not prescribe Allopurinol or any other gout medication to Plaintiff, and did not list any gout medication, including Allopurinol, as one of the medications Plaintiff was currently taking. Id. Rather, Skavaril's October 2010 medical notes document that Plaintiff had "discontinued her [gout] medication" and assess Plaintiff as "stable." Id. Similarly, Skavaril's December 2010 medical notes are absent any statements showing Plaintiff was taking gout medications at that time, that Skavaril had prescribed any gout medication to Plaintiff, or that Skararil had prescribed a plan to address Plaintiff's gout. Tr. 521-22. Based on the above, I conclude that the ALJ provided legally sufficient reasons supported by substantial evidence in the record when finding Plaintiff's gout not severe.

Notably, Plaintiff's arguments also fail because she cites no evidence, including any medical signs, symptoms, or laboratory findings, evidencing any functional limitations arising out of her gout or showing that her gout had any effect on her ability to work. Rather, Plaintiff

merely cites to her diagnoses of gout and prescriptions of Allopurinol. Such evidence does not establish that Plaintiff is significantly limited–either physically or mentally–by gout, let alone that her gout is severe.[2] See Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990) (the "mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability").

**B. Failure to Resolve the Ambiguity in the Record**

Lastly, Plaintiff contends that the ALJ erred at Step Two by failing to resolve the ambiguities in the record. Specifically, Plaintiff maintains the ALJ erred when failing to resolve the "conflict" between Abbassian's diagnosis that Plaintiff had gout and Skavaril's conclusion that Plaintiff no longer had gout. Plaintiff's argument is unavailing.

Further development of the record is required "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff fails to show that either of these conditions were met. Abbassian's conclusion in May 2009 that Plaintiff had gout and Skavaril's subsequent October 2010 conclusion that Plaintiff no longer had gout because she had discontinued her gout medication and was "stable" does not make the evidence in the record ambiguous or inadequate. Tr. 524, 959. Rather, such evidence makes it clear that Plaintiff's gout was not a severe impairment–at least at the time the ALJ concluded Plaintiff was not disabled. The record here was sufficient for the ALJ to evaluate the evidence reasonably, and did not require the ALJ to develop the record further.

---

[2] To the extent Plaintiff argues that her testimony establishes gout as a severe impairment, such argument fails. As discussed above, the ALJ properly found Plaintiff was not credible and therefore, did not err when rejecting Plaintiff's conclusory statements that she was functionally limited by gout.

In sum, Plaintiff fails to show that the ALJ erred at Step Two.  Based on the evidence

before me, I conclude that the ALJ provided legally sufficient reasons supported by substantial

evidence in the record when concluding that Plaintiff's gout was not a severe impairment.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is AFFIRMED pursuant to

sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this _____ day of _____, 2013.


MARCO A. HERNANDEZ
United States District Judge